**EMPOWER LAW, PC**
**DOMINIC J. MESSIHA Bar No. 204544**
Dominic@empower.law
**ARIEL D. WEINDLING, Bar No. 235320**
Ariel@empower.law
1639 11th Street, Suite 204
Santa Monica CA 90404
Telephone: 310.650.8580

**Attorneys for Plaintiff**
**LINDA KHENE**

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA KHENE, an individual, | **CASE NO.:** |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | |
| CONSULAT GÉNÉRAL DE FRANCE À LOS ANGELES; a foreign state; CAMILLE FRIER, an individual; and DOES 1 to 100, inclusive, | 1. **Harassment in Violation of the Fair Employment and Housing Act ("FEHA")(California Gov't Code § 12940 et seq.);** |
| Defendants. | 2. **Failure to Prevent Harassment in Violation of FEHA;** |
| | 3. **Retaliation in Violation of FEHA;** |
| | 4. **Failure to Pay Overtime Wages (California Labor Code §§ 510, 1194(a), and 1198);** |
| | 5. **Failure to Provide Accurate, Itemized Wage Statements (California Labor Code § 226(a));** |
| | 6. **Failure to Maintain Records (Labor Code § 1174(d); and** |

**7. Failure to Pay All Wages Upon Termination (California Labor Code Sections 201-203).**

**JURY TRIAL DEMANDED**

**[28 U.S.C. §§ 1330, 1602-1611]**

COMPLAINT

Plaintiff **LINDA KHENE** (hereinafter "Plaintiff"), on behalf of herself, alleges and states as follows and submits the herein Complaint:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action and the matters alleged herein pursuant to Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. § 1330, §§ 1602-1611, and the exceptions contained therein. 28 U.S.C. § 1330(b) provides that a federal district court "shall" have personal jurisdiction over the foreign state where service of process has been made under FSIA's process service rules.

2.      This Court has jurisdiction over Defendant **CONSULAT GÉNÉRAL DE FRANCE À LOS ANGELES** (hereafter, the "French Consulate"), because it is a unit of the French Embassy in the United States, and thus a foreign state.

3.      This Court has jurisdiction over Defendant **CAMILLE FRIER**, who is the wife of the French Consul General in Los Angeles, Adrien Frier, because she is either citizen of California, has sufficient minimum contacts in California, or otherwise intentionally avails herself of the California market so as to render the exercise of jurisdiction over them by this Court consistent with traditional notions of fair play and substantial justice.

4.      Venue is proper in this Court, because the French Consulate is located in Los Angeles County, the Consul General and Defendant CAMILLE FRIER reside in Los Angeles, and the unlawful acts and omissions alleged herein took place in Los Angeles, within the Western Division of the Central District of California.

**THE PARTIES**

5. At all times relevant herein, Plaintiff LINDA KHENE was, and is, an individual residing in the city of Los Angeles, County of Los Angeles, State of California.

6. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant herein, Defendant CONSULAT GÉNÉRAL DE FRANCE À LOS ANGELES was and is a foreign sovereign entity, namely the nation of France, doing business and engaging in commercial activity in this state and county.

7. Plaintiff LINDA KHENE was employed by the French Consulate as Assistant to the Consul General, until she was forced to resign her employment.

8. Plaintiff hereby demands a trial by jury.

**FACTS COMMON TO ALL CAUSES OF ACTION**

9. Plaintiff was employed by the French Consulate from October 3, 2022, until November 5, 2025, as a local employee in a non-diplomatic role. Her duties were comprised of administrative, planning, and managerial support tasks unrelated to any political, diplomatic, or governmental activity.

10. Plaintiff performed her job duties with professionalism, dedication, and loyalty. She received three positive annual performance evaluations, reflecting her strong commitment to the Consulate General of France in Los Angeles. However, after the arrival of the current Consul General in October 2024, her working environment deteriorated significantly, as set forth below.

COMPLAINT

11.     Although Defendant CAMILLE FRIER  ("Defendant Frier") was not employed by the French Consulate or any other related entity, and had no official responsibilities or duties, she began directing Plaintiff's work and the work of other French Consulate employees. This included asking Plaintiff for personal favors as well as holding employee meetings and training staff.

12.     Despite lacking any authority to do so, Defendant Frier managed to obtain network and email access as well as access to internal tools and budget management systems. Defendant Frier issued directives to the staff and began occupying vacant offices (during other employees' vacations or in open space) in the consulate building where she performed her unsanctioned work.

13.     This behavior escalated into Defendant Frier demanding that her husband, the Consul General, be removed from email chains, which was obviously improper. Defendant Frier also contacted external partners directly on behalf of the French Consulate, creating confusion and unease among staff.

14.     As Defendant Frier's campaign to accumulate authority within the French Consulate escalated, she expressed her intention to promote and rent out the Consul's Residence in Beverly Hills for private events, going so far as to suggest the creation of a website for that purpose. This was completely outside the scope of the Consulate's mission.

15.     Despite several oral and written complaints from staff regarding Defendant Frier's improper acts, neither the Consul General nor the Deputy Consul

took any action to address the situation. Indeed, both the Human Resources Secretary and the Deputy Consul were keenly aware of Defendant Frier's meddling in official Consulate operations, but decided to turn a blind eye, and failed to inform either the French Embassy or the Central Administration. Instead, they continued copying Defendant Frier on emails as she requested. Consequently, Defendant Frier's power grab continued unchecked.

16. In the midst of the chaos caused by Defendant Frier's unauthorized supervision and direction of French Consulate staff and activities, Plaintiff was also subjected to a serious incident of harassment because of her religion. Plaintiff, who is Muslim, along with a Muslim co-worker, were directly harassed by the Deputy Consul General on that basis.

17. Incredibly, the Deputy Consul General addressed both employees by stating: "Linda and Kenza, since you are Muslims, what is going on with the terrorists in Germany?" By way of context, at the time, Germany experienced several terrorist attacks. On February 13, 2025, a man drove a car deliberately into a crowd at a trade union demonstration in Munich, Germany. The attack injured dozens of people (approx. 44), and two victims (a mother and her 2-year-old daughter) died from their injuries several later. And on February 21, 2025, there was a knife attack at the Holocaust Memorial in Berlin which severely injured a tourist. Police described motives tied to antisemitism and extremist ideology; the suspect was apprehended.

18. Plaintiff was shocked, highly offended, and extremely troubled by the

6
COMPLAINT

Deputy Consul's comment. She promptly made written report to the Consul General, but neither he nor anyone else at the French Consulate investigated or took remedial action. Rather, it appears that the Consul General merely "spoke to" his Deputy. The Deputy Consul later told Plaintiff that she should have simply "spoken to him directly" and he made attempts to minimize the severity of the interaction.

19. In addition to all of the above serious concerns, Plaintiff's employment was also marred by ongoing wage and hour violations. While Plaintiff functioned in a non-exempt capacity and was subject to all of the protections of the California Labor Code and Industrial Welfare Commission Wage Orders, she was denied overtime compensation, pressured to work off the clock without pay, and retaliated against for refusing to do so.

20. For example, on July 15, 2025, Plaintiff was asked by the Consul General to volunteer to work *without pay* at a Bastille Day concert organized by his wife, Defendant Frier, stating it would be "an honor to represent France." The work requested was similar if not identical to the work Plaintiff was already performing for pay. Plaintiff declined.

21. In retaliation for refusing to work without pay, Defendant Frier excluded Plaintiff from a private "thank you event" she organized for those who had worked on organizing the Bastille Day concert. Plaintiff had indeed worked on the event, but only when she was permitted to record her hours worked.

22. Also in retaliation for her refusal to "volunteer" to perform her job duties

without pay, and for complaining regarding the Deputy Consul General's discriminatory remarks to her and her Muslim co-worker, certain of Plaintiff's job duties were taken away. These included event organization responsibilities, which had been part of her duties since the beginning of her employment, and were taken away from her. An intern was subsequently recruited and assigned some of those tasks. The French Consulate had not previously employed an intern for events organizing.

23.    Further, although Defendant French Consulate's own written policies stated that employees would receive overtime pay for hours worked in excess of eight (8) in a day or forty (40) hours in a week, Plaintiff was routinely denied overtime pay.

24.    As another example of its disregard for the law, the French Consulate also required its employees to file their federal income taxes as "self-employed," even though they were not independent contractors, were paid via W2, and were at all times subject to the direction and control of the French Consulate. Plaintiff did not hold any other employment during her employment with the French Consulate.

25.    As a result of the ongoing unlawful conduct to which she was subjected, Defendants' failure to address or remedy that conduct despite her complaints, and the direct retaliation that she suffered as a result, Plaintiff began experiencing stress, anxiety, insomnia, and morning vomiting before work each day.

26.    On September 15, 2025, Plaintiff had to leave work after becoming ill,

and she sought medical attention. Her physician prescribed her a two-week medical leave with a recommendation that she resign to protect her mental and physical health. That medical leave of absence was extended to October 6, 2025.

27. Plaintiff was unable to return to work on October 6, 2025, due to continuing severe anxiety, vomiting, diarrhea and insomnia due to work-related stress, and was forced to resign.

## GENERAL ALLEGATIONS

28. Defendant Frier is subject to suit because pursuant to her exercise of direction and authority over Plaintiff and others, she is considered a "joint employer" for the purposes of the statutes below.  More specifically, Defendant Frier controlled the essential terms and conditions of Plaintiff's employment, including: 1) wages, benefits, and other compensation; 2) hours of work and scheduling; 3) the assignment of duties to be performed; 4) the supervision of the performance of duties; and 5) work rules and directions.  As such, Defendant Frier was also Plaintiff's employer.

29. Moreover, neither Defendant French Consulate nor Defendant Frier enjoy any immunity for their actions under the FSIA. Defendant Frier, as an individual, is expressly excluded as the FSIA applies only to "foreign states." Further, Defendant French Consulate is not immune because of the "commercial activity" exception found at 28 U.S.C. § 1605(a)(2): "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case … (2) in which the action is based upon a commercial activity carried on in the

United States by the foreign state … and that act causes a direct effect in the United States."

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

30.     Within one year of the last date of discrimination herein alleged by Plaintiff against Defendants and their agents, managers, and/or supervisors, Plaintiff filed a charge of discrimination with the California Department of Fair Employment and Housing/Civil Rights Department ("DFEH") against Defendants alleging harassment, discrimination, and retaliation based on her religious creed. An immediate Right-to-Sue letter was issued.  A true and correct copy of that Right-to-Sue letter is attached hereto as Exhibit A.

31.     Based on the foregoing, all administrative remedies have been exhausted.

## FIRST CAUSE OF ACTION

### *Against All Defendants*

### *Hostile Work Environment in Violation of FEHA*

32.     Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

33.     Defendant French Consulate is subject to suit under the Fair Employment and Housing Act, Government Code § 12940, et seq., in that it regularly employs five or more persons. Defendant Frier is a joint employer with the French

Consulate because she controlled essential terms and conditions of Plaintiff's employment.

34.    Under the FEHA, it is unlawful for anyone to harass an employee on the basis of her religion and/or religious creed, among other characteristics.

35.    During her employment with Defendant, Plaintiff was harassed due to her religion.  More specifically, Plaintiff was forced to endure discriminatory and harassing comments made by the Deputy Consul General regarding Muslims. This included the insinuation that because of their faith, Plaintiff and her Muslim coworker would be able to "explain" terrorism and violence.

36.    Defendant created, tolerated and condoned a work environment that was pervasively hostile to Plaintiff on account of her religion.

37.    The conduct of Defendants as alleged in this Complaint was sufficiently pervasive to alter the terms and conditions of employment and the work environment, such that it created a hostile environment.

38.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits and/or out of pocket expenses in an amount according to proof at the time of trial. As a further direct and proximate result of Defendant's conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits and/or other prospective damages in an amount according to proof at the time of trial.

39.    As a further direct and proximate result of Defendant's conduct,

Plaintiff has suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, mental and emotional pain and distress and discomfort, all to her detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

40.     By reason of the conduct of Defendants herein, Plaintiff has retained attorneys to prosecute her claims under the FEHA. Plaintiff is therefore entitled to recover reasonable attorneys' fees and costs pursuant to Govt. Code § 12965(b), in addition to other damages as provided by law and as alleged herein.

41.     Defendants, and each of them, committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Thus, Plaintiff is entitled to recover punitive damages from Defendant.

### SECOND CAUSE OF ACTION

*Against All Defendants*

*Failure to Prevent Harassment Under FEHA*

42.     Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

43.     Defendant French Consulate is subject to suit under the Fair Employment and Housing Act, Government Code § 12940, et seq., in that it regularly employs five or more persons. Defendant Frier is a joint employer with the French

Consulate because she controlled essential terms and conditions of Plaintiff's employment.

44.   Under California law, it is unlawful for " [f]or an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Gov't Code § 12940(k).

45.   Defendants failed to take all reasonable steps necessary to prevent harassment from creating an environment that was hostile and intolerable based on Plaintiff's religion.

46.   As a proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits and/or out of pocket expenses in an amount according to proof at the time of trial. As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits and/or other prospective damages in an amount according to proof at the time of trial.

47.   As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, mental and emotional pain and distress and discomfort, all to her detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

48.   By reason of the conduct of Defendants herein, Plaintiff has retained

attorneys to prosecute her claims under the FEHA. Plaintiff is therefore entitled to recover reasonable attorneys' fees and costs pursuant to Govt. Code § 12965(b), in addition to other damages as provided by law and as alleged herein.

49.    Defendants committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Thus, Plaintiff is entitled to recover punitive damages from Defendants.

## THIRD CAUSE OF ACTION

### *Against All Defendants*

### *Retaliation In Violation of FEHA*

50.    Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

51.    Defendant French Consulate is subject to suit under the Fair Employment and Housing Act, Government Code § 12940, et seq., in that it regularly employs five or more persons. Defendant Frier is a joint employer with the French Consulate because she controlled essential terms and conditions of Plaintiff's employment.

52.    The Fair Employment and Housing Act (the "FEHA") makes it unlawful for any employer to discriminate and/or retaliate against any person because the person has opposed any practices forbidden under the FEHA.

53.    Plaintiff complained to Defendant directly and in writing about the

Deputy Consul General's harassing conduct concerning Plaintiff's Muslim religion. Defendants failed to investigate or take any remedial action.

54.    As the direct result of her complaints, Plaintiff was subjected to swift retaliation in the form of micromanagement, specifically criticizing Plaintiff because of her overtime hours (which were authorized and necessary).

55.    Furthermore, the retaliation and hostile working environment caused Plaintiff to resign her employment, resulting her constructive termination.

56.    Based on the unquestionable timing of this retaliation as well as the Defendants' failure to act on Plaintiff's complaints, there is a clear causal link between her protected activities and the adverse employment actions she has suffered.

57.    Plaintiff is informed and believes, and based thereon alleges, that as a direct and proximate result of the acts alleged herein, Plaintiff has suffered and continues to suffer economic detriment and monetary damages, including, but not limited to, loss of wages, salary, bonuses, and benefits, including, but not limited to, retirement savings, life, and medical/health insurance, and prejudgment interest in an amount to be determined at trial.

58.    Plaintiff is informed and believes, and based thereon alleges, that as a further direct and proximate result of the acts alleged herein, Plaintiff has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation,

mental anguish, emotional and physical distress, pain and suffering, and has been generally damaged in an amount to be determined at trial.

59.    Plaintiff is informed and believes, and based thereon alleges, that Defendants willfully engaged in the conduct alleged herein with malice, fraud, and oppression, without excuse or justification, and with the specific intent to injure Plaintiff for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. By reason thereof, Plaintiff is entitled to an award of exemplary and punitive damages against Defendants sufficient to punish and deter Defendants from engaging in such conduct in the future in an amount to be determined at trial.

60.    As a direct result of the conduct of Defendants as set forth above, Plaintiff was forced to incur substantial attorney's fees and costs which are recoverable under California Government Code § 12965(b).

## FOURTH CAUSE OF ACTION

*Against All Defendants*

*Violation of California Labor Code §§ 510, 1194(a), and 1198*

*Failure to Pay Overtime/Double Time Wages*

61.    Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

62.    Plaintiff was a non-exempt employee who primarily performed administrative tasks not subject to any exemption under California law.

16
COMPLAINT

63.    California Labor Code § 510 requires an employer to compensate its non-exempt employees at a rate of no less than one and one-half (1.5) times their regular rate of pay for any work in excess of eight (8) hours in one (1) workday, in excess of forty (40) hours in any one (1) workweek, and during the first eight (8) hours worked on the seventh (7th) day of work in any one (1) workweek.

64.    California Labor Code § 510 requires an employer to compensate its non-exempt employees at a rate of no less than two (2) times their regular rate of pay for any work: in excess of twelve (12) hours in one (1) workday, and in excess of eight (8) hours on the seventh (7th) day of work in any one (1) workweek.

65.    At all times relevant herein, Plaintiff worked hours in excess of eight (8) hours in one (1) workday, in excess of forty (40) hours in any one (1) workweek, and/or during the first eight (8) hours worked on the seventh (7th) day of work in any one (1) workweek, without receiving compensation at a rate of no less than one and one-half (1.5) times their regular rate of pay.

66.    At times relevant herein, Plaintiff worked hours in excess of twelve (12) hours in one (1) workday and in excess of eight (8) hours on the seventh (7th) day of work in any one (1) workweek, without receiving compensation at a rate of no less than two (2) times her regular rate of pay.

67.    At times relevant to this action, Defendants failed to pay overtime compensation to Plaintiff as required by the Labor Code.

17
COMPLAINT

68.     As a proximate cause of the aforementioned violations, Plaintiff has been damaged in an amount according to proof at time of trial.  Plaintiff is entitled to recover the unpaid balance of wages owed, penalties, including penalties available pursuant to California Labor Code § 558, plus interest, and reasonable attorneys' fees and costs of suit according to California Labor Code § 1194, et seq.

### FIFTH CAUSE OF ACTION

***Against all Defendants***

***Violation of Labor Code § 226(a)***

***Failure to Provide Accurate, Itemized Wage Statements***

69.     Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

70.     California Labor Code § 226(a) provides that every employer shall, semi-monthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing gross wages earned.

71.     Plaintiff is informed and believes, and based thereon alleges, that throughout the relevant time period, Defendants repeatedly, willfully, and without good faith, failed to furnish Plaintiff with accurate, itemized wage statements in writing showing all hours worked and all wages earned, including but not limited to overtime compensation.

COMPLAINT

72.     As a result of Defendants' conduct, Plaintiff has been damaged and is entitled to recover the greater of actual damages or $50.00 for the initial pay period in which a violation occurred and $100.00 for each violation in a subsequent pay period, not exceeding an aggregate penalty of $4,000.00, in an amount to be determined at trial.

73.     In addition, as a direct result of the conduct of Defendants, and each of them, as set forth above, Plaintiff was forced to incur substantial attorney's fees and costs which are recoverable under California Labor Code § 226(e) in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### *Against all Defendants*

### *Violation of Labor Code § 1174(d) - Failure to Maintain Payroll Records*

74.     Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

75.     California Labor Code § 1174(d) provides that every employer shall keep, for no less than three (3) years, payroll records showing the accurate hours worked daily by and the wages paid to employees.

76.     Plaintiff was employed by Defendants as a non-exempt employee. However, Defendants repeatedly failed, and continue to fail, to maintain full, complete, and accurate payroll records showing the hours that Plaintiff actually worked.

77.    As such, Plaintiff is entitled to recover civil penalties from Defendants pursuant to California Labor Code § 1174.5.

## SEVENTH CAUSE OF ACTION

### *Violation of Labor Code §§ 201-203*

### *Failure to Pay All Wages Upon Termination – Against all Defendants*

78.    Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

79.    Pursuant to California Labor Code §§ 201-203, an employee's wages earned and unpaid at the time of separation are due and payable immediately.

80.    After her separation of employment from Defendants, Plaintiff did not and still has not received compensation for all wages owed.

81.    Therefore, Plaintiff is entitled to restitution and penalties as provided by California Labor Code § 203.

82.    Plaintiff is also entitled to recovery of her reasonable attorneys' fees as provided by Labor Code § 1194(a).

WHEREFORE, Plaintiff prays for judgment against Defendants and DOES 1 through 100, inclusive, and each of them, jointly and severally, as follows:

## PRAYER FOR RELIEF

1.    For an award of reasonable attorneys' fees, penalties, interest, costs,

expert costs, and expenses pursuant to statutory and common law;

2.   For an award of punitive damages to punish and deter Defendants from violating the law in the future; and

3.   For such other and further relief as this Court may deem just, fair, and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

DATED: March 12, 2026

Respectfully Submitted,
**EMPOWER LAW, PC**

_____
Dominic J. Messiha, Esq.
Attorneys for Plaintiff
**LINDA KHENE**